# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

### CASE NO.

DUSTIN STEFEK, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

PROFESSIONAL PARKING MANAGEMENT
CORPORATION; PAVE MOBILITY, INC.; and
ETICO PARKING SOLUTIONS INC.,

     Defendants.

_____/

### CLASS ACTION COMPLAINT

Plaintiff Dustin Stefek ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Professional Parking Management Corporation ("PPM"), PAVE Mobility, Inc. ("PAVE"), and Etico Parking Solutions Inc. ("Etico") (together, "Defendants"), and alleges as follows:

### PRELIMINARY STATEMENT

1. This is a privacy case under the Driver's Privacy Protection Act. Plaintiff is not suing to avoid a parking payment. He paid the demand. The issue is how Defendants got his name and home address. Defendants used his license plate number to obtain that information from a protected motor vehicle record, then used it to send a private payment demand to his home.

2.      Plaintiff is a resident of Lakeland, Florida. On November 9, 2023, he parked a vehicle at a private parking lot. Days later, he received a private "Parking Charge Notice" from PPM, a company he had never heard of or dealt with before. The notice was addressed to Plaintiff by name and mailed to his home address. It threatened that nonpayment could result in collections. It also warned that the vehicle could be booted or towed at the owner's expense.

3.      Before Defendants obtained his personal information and mailed the notice, Plaintiff had not given Defendants his name. He had not given them his home address. He had not signed a written consent, created an account, or provided personal information for private parking enforcement. Defendants could not identify him or reach him at home from the license plate capture alone. They did so by using his license plate number to obtain his name and address from a state motor vehicle record.

4.      Congress enacted the Driver's Privacy Protection Act to protect personal information held in state motor vehicle records. The DPPA prohibits any person from knowingly obtaining, disclosing, or using that information for a purpose Congress did not permit. Private parking charge invoicing is not among the permitted uses Congress listed.

5.      Defendants' system is standardized. A camera reads a plate. The plate is used to obtain a registered owner's name and home address from motor vehicle records. A private payment demand is mailed to the owner's home. The notice threatens collections, booting, and towing. Defendants built this workflow around

[2]

access to DMV-sourced personal information. Without that information, Defendants cannot identify the owner, locate the owner's home address, or send the demand.

6. Defendants' system is not limited to Plaintiff. It is a standardized workflow used to convert license plate captures into names and home addresses, then use that information to send private parking demands. Plaintiff brings this case for himself and others whose protected motor vehicle information was obtained, used, or disclosed through that same system.

## **PARTIES**

7. Plaintiff is a natural person and a citizen and resident of the State of Florida. Plaintiff resides in Lakeland, Florida, in the Middle District of Florida. At all relevant times, Plaintiff was the registered owner of the vehicle bearing Florida license plate GWXU58.

8. PPM is a Georgia corporation registered to do business in Florida as a foreign profit corporation. PPM's Florida corporate filings list its principal address, mailing address, and registered-agent address as 1815 Griffin Road, Suite 204, Dania Beach, Florida 33004. PPM is a "person" within the meaning of 18 U.S.C. § 2725(2). PPM operates private parking enforcement programs at parking facilities throughout Florida and other states.

9. PAVE is a Delaware corporation registered to do business in Florida as a foreign profit corporation. Like PPM, PAVE's Florida corporate filings list its principal address, mailing address, and registered-agent address as 1815 Griffin Road,

[3]

Suite 204, Dania Beach, Florida 33004. PAVE is a "person" within the meaning of 18 U.S.C. § 2725(2).

10.   Etico is a Delaware corporation registered to do business in Florida as a foreign profit corporation. Like PPM and PAVE, Etico's Florida corporate filings list its principal address, mailing address, and registered-agent address as 1815 Griffin Road, Suite 204, Dania Beach, Florida 33004. Etico is a "person" within the meaning of 18 U.S.C. § 2725(2).

11.   PPM, PAVE, and Etico share the same registered agent, Jeff Price, who is listed as an officer in the corporate filings for each of these entities, with a listed address of 1815 Griffin Road, Suite 204, Dania Beach, Florida 33004.

12.   PAVE and Etico are referred to together as the "Technology Defendants." The Technology Defendants provide or support parking enforcement technology services for private parking operators, including PPM. Upon information and belief, those services were used at parking facilities in this District, including the parking facility at issue in this case.

13.   The Technology Defendants' services include, upon information and belief, LPR-based enforcement technology, enforcement software, DMV data-retrieval functionality, notice-generation tools, and mailing-related infrastructure. PAVE's website states that it is "Trusted in 450+ Locations Nationwide" and lists its service area as "Nationwide USA."

[4]

14.     Public materials associate PAVE with Etico. Etico's public LinkedIn page identifies "Etico Parking" as "Now Pave Mobility," and a 2025 job posting for Etico describes the position as being with "Pave Mobility of Dania Beach, FL."

15.     PPM, PAVE, and Etico share the same Florida principal address, mailing address, and registered-agent address. Their Florida corporate filings also identify overlapping officers, including Frederick Bredemeyer, Jeff Price, and Yelena Sivaya.

16.     Upon information and belief, PPM, PAVE, and Etico are related or commonly controlled entities associated with the same parking enforcement workflow.

## JURISDICTION AND VENUE

17.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 through 2725.

18.     This Court has personal jurisdiction over PPM because PPM conducts business in Florida, is registered to do business in Florida, and directed the conduct at issue in this action toward Plaintiff in this District. PPM enforced an alleged private parking charge arising from a parking facility in Lakeland, Florida; obtained or caused the obtainment of Plaintiff's DMV-sourced personal information; mailed or caused a private parking notice to be mailed to Plaintiff's home address in Lakeland, Florida; and collected payment in response to that notice.

[5]

19.     This Court has personal jurisdiction over PAVE because PAVE is registered to do business in Florida, its Florida corporate filings list a Florida principal address and registered agent, and PAVE provides enforcement technology services to private parking operators at facilities located in Florida, including facilities operated or enforced by PPM. Upon information and belief, PAVE provided or supported the technology platform used in PPM's private parking enforcement workflow, including the workflow used for Plaintiff's Parking Charge Notice. Through that platform, and upon information and belief, PAVE processed or supported the registered-owner lookup, data transmission, notice generation, or mailing workflow for the Parking Charge Notice, which concerned a parking facility in this District and was mailed to Plaintiff's home in this District.

20.     This Court has personal jurisdiction over Etico because Etico is registered to do business in Florida, its Florida corporate filings list a Florida principal address and registered agent, and Etico provides or participates in parking enforcement technology services connected to private parking enforcement in Florida. As of November 2023, the parkinginvoice.com payment portal used for PPM's private parking enforcement program displayed "Etico Parking" branding. Upon information and belief, Etico provided or supported the payment portal, registered-owner lookup, notice generation, mailing, payment, or related enforcement workflow for Plaintiff's Parking Charge Notice, which concerned a parking facility in this District and was mailed to Plaintiff's home in this District.

[6]

21.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District. The parking facility at issue is located in Lakeland, Florida. Plaintiff resides in Lakeland, Florida. Defendants obtained, used, or disclosed Plaintiff's DMV-sourced personal information to identify him by name and mail a private parking notice to his home address in this District.

## THE DRIVER'S PRIVACY PROTECTION ACT

22.     The Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 through 2725, protects personal information contained in motor vehicle records. The DPPA makes it unlawful for any person knowingly to obtain or disclose personal information from a motor vehicle record for any use not permitted by the statute. 18 U.S.C. § 2722(a).

23.     The DPPA also imposes civil liability on any person who knowingly obtains, discloses, or uses personal information from a motor vehicle record for a purpose not permitted by the statute. 18 U.S.C. § 2724(a).

24.     "Personal information" under the DPPA means information that identifies an individual, including the individual's name and address. 18 U.S.C. § 2725(3).

25.     A "motor vehicle record" means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles. 18 U.S.C. § 2725(1).

[7]

26.    The DPPA defines "express consent" to mean consent in writing, including consent conveyed electronically that bears an electronic signature. 18 U.S.C. § 2725(5).

27.    The DPPA provides a limited set of permissible uses of personal information from motor vehicle records. Those permissible uses are enumerated in 18 U.S.C. § 2721(b).

28.    A person who violates the DPPA is liable to the individual to whom the information pertains. The remedies Plaintiff seeks here include actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages for willful or reckless disregard of the law, and reasonable attorneys' fees and costs. 18 U.S.C. § 2724(b).

## FACTUAL ALLEGATIONS

### A.    PPM's private parking enforcement model

29.    PPM monitors and enforces parking at private parking facilities in Florida and other states. These facilities are privately owned. They are not operated by any municipal, county, or state government.

30.    PPM uses automated license plate recognition ("ALPR") cameras and related technology to capture and record license plate numbers as vehicles enter and exit private parking lots.

31.    PPM's publicly available privacy policy states that ALPR data "stored in our System does not include any personally identifying information (PII)." In other words, PPM's ALPR system captures license plate images, timestamps, and location

[8]

data. It does not, by itself, identify the driver, the registered owner, or the owner's home address.

32.    To identify the registered owner of a vehicle and locate the owner's home address, PPM must obtain that personal information from another source. Upon information and belief, that source is a state motor vehicle record, or a vendor, database, or other motor-vehicle-record-derived source that obtains registered-owner information from state motor vehicle records.

33.    When PPM's system flags a vehicle for an alleged unpaid or underpaid private parking charge, PPM does not know the registered owner's name or home address from the license plate alone. Nor does PPM require drivers to provide their names, home addresses, or other registered-owner information at entry, at exit, or through an on-site attendant.

34.    Upon information and belief, Defendants request, retrieve, or cause the retrieval of registered-owner information from motor vehicle records after a captured license plate has been flagged for an alleged private parking charge. In Plaintiff's case, the lookup occurred after the vehicle had departed the parking facility, as part of an after-the-fact invoicing process.

35.    A license plate identifies a vehicle. It does not, by itself, identify the person who parked the vehicle, the person who drove it, or the registered owner's home address. Defendants' post-departure workflow nevertheless uses the captured plate number to identify the registered owner, obtain the owner's home address from motor vehicle records, and send a private payment demand to that address.

[9]

36.    PPM then mails a private "Parking Charge Notice" to the registered owner's home address. The notice demands payment and threatens that failure to pay may result in the matter being referred to collections and that the vehicle may be booted or towed at the owner's expense.

37.    PPM's notice states on its face that it is "privately issued, is not issued by a governmental authority, and is not subject to criminal penalties." The notice also states that it "is an attempt to collect a debt, and any information obtained will be used for that purpose."

38.    Defendants were not required to obtain DMV-sourced personal information to operate a private parking facility or collect payment for parking. Private parking operators can require payment at entry, at exit, at an on-site kiosk, through an app or website where the driver voluntarily provides information, or through on-site notices that do not require a post-departure motor vehicle record lookup. Defendants instead used a post-departure workflow that converted license plate captures into registered-owner names and home addresses.

39.    Upon information and belief, PPM does not file civil actions or arbitrations to collect private parking charges of this type. PPM's notice-based enforcement workflow relies on mailed notices, threatened collections, and threatened booting or towing.

40.    PPM directs payment through www.parkinginvoice.com, through an automated phone line, or by mail. PPM charges a $4.99 convenience fee for online and telephone payments.

[10]

41.    As of November 2023, the parkinginvoice.com payment portal displayed the branding "Etico Parking." Upon information and belief, the payment portal was operated through, or in connection with, the Technology Defendants' parking enforcement platform.

## B.    The Technology Defendants' role in the enforcement workflow

42.    PAVE and Etico provide or support parking enforcement technology platforms and services used in connection with PPM's private parking enforcement workflow. Upon information and belief, the Technology Defendants' platform or systems include LPR-based enforcement technology, enforcement software, data infrastructure, DMV data-retrieval functionality, notice-generation tools, and mailing-related systems used to enforce private parking charges.

43.    PAVE's website publicly describes this enforcement workflow. On its Process page, PAVE describes a multi-step process. In the step titled "Violation Detection," PAVE states that its LPR system queries permit lists and detects violations. In the step titled "Send Violation to Vehicle Owner," PAVE states: "The system will gather the violator's license plate numbers and addresses from our data sources and send the parking charge by mail."

44.    PAVE's FAQ page states, in response to the question "How does LPR work?": "After validating that a parking charge is due, the vehicle owner's data is requested from the DMV and a parking charge is sent."

45.    Public materials associate PAVE with Etico Parking. A public LinkedIn page identifies "Etico Parking" as "Now Pave Mobility." As of November 2023, the

[11]

parkinginvoice.com payment portal used for PPM's private parking enforcement displayed "Etico Parking" branding. Upon information and belief, PAVE and Etico are related or commonly controlled entities associated with the same parking enforcement workflow.

46.    Upon information and belief, PPM-, PAVE-, and Etico-related public terms and parking materials identify or refer to PAVE, Etico, or both as participants in private parking enforcement and state that registered-owner information is obtained from the DMV. Plaintiff did not see, accept, or agree to any PPM, PAVE, or Etico terms before Defendants obtained his personal information from a motor vehicle record.

47.    Upon information and belief, the Technology Defendants request, receive, process, and store personal information from motor vehicle records, including registered-owner names and home addresses tied to captured license plate numbers, as part of the enforcement workflow they provide, operate, or support for PPM. The details of the Technology Defendants' data-retrieval processes, DMV access agreements, data-storage architecture, data-sharing arrangements, and allocation of functions between PAVE and Etico are within Defendants' knowledge and control.

48.    Upon information and belief, the Technology Defendants transmit DMV-sourced personal information to PPM and to mailing vendors to facilitate the generation and mailing of private parking notices. Upon information and belief, the Technology Defendants also transmit or make DMV-sourced personal information

[12]

available to downstream vendors, including collection vendors, when notices remain unpaid or when additional enforcement activity is pursued.

49.    PAVE publicly describes a system that gathers vehicle-owner addresses "from our data sources," requests vehicle-owner data from the DMV, and sends parking charges by mail. Upon information and belief, PAVE, Etico, or both obtain, use, and disclose DMV-sourced personal information as part of the parking enforcement workflows they provide or support for PPM and other private parking operators.

### C.    Plaintiff's parking notice and payment

50.    On November 9, 2023, Plaintiff parked a vehicle at a private parking facility located at 1211 Florida Avenue South, Lakeland, Florida 33803. Upon information and belief, the facility was monitored by PPM using LPR-based enforcement technology provided, operated, or supported by the Technology Defendants.

51.    PPM's system captured photographs of the vehicle's license plate at entry, 6:14 p.m., and exit, 7:54 p.m.

52.    Before Defendants obtained his personal information and mailed the Parking Charge Notice, Plaintiff had not provided his name, home address, or other personal information to PPM, PAVE, Etico, or any agent or vendor acting on their behalf. Plaintiff had no prior relationship with PPM, PAVE, or Etico.

53.    Plaintiff did not sign any written consent form or execute any electronic agreement authorizing PPM, PAVE, Etico, or any other party to obtain his personal

[13]

information from a motor vehicle record. Plaintiff did not see any signage at the parking facility disclosing that Defendants would obtain his name and home address from state motor vehicle records. In any event, posted signage is not "express consent" under 18 U.S.C. § 2725(5), which requires consent in writing or electronic consent bearing an electronic signature.

54.    On or about November 15, 2023, PPM mailed a "Parking Charge Notice" to Plaintiff's home address in Lakeland, Florida. The notice was addressed to Plaintiff by name. The notice identified the license plate number, the parking location, and the entry and exit times.

55.    The notice stated a "Parking Charge" of $85.00, a "Reduced Charge" of $45.00 if payment was made within 15 days, and a "Total Amount Due" of $45.00.

56.    The notice stated in bold text:

"FAILURE TO PAY THIS PARKING CHARGE NOTICE MAY RESULT IN THIS MATTER BEING REFERRED TO COLLECTIONS."

57.    The notice also stated:

"UNPAID PARKING CHARGE NOTICES MAY RESULT IN THE VEHICLE BEING BOOTED OR TOWED AT THE OWNER'S EXPENSE."

58.    Defendants could not have identified Plaintiff by name or located his home address from the license plate capture alone. Upon information and belief, Defendants identified Plaintiff and located his home address by using the captured license plate number to obtain personal information from a motor vehicle record maintained by the Florida Department of Highway Safety and Motor Vehicles,

[14]

another state motor vehicle agency, or a vendor or data source that obtains registered-owner information from motor vehicle records.

59.    Defendants did not obtain Plaintiff's name and home address from Plaintiff, from an account Plaintiff created, from an on-site attendant, from a public accident report, from a court filing, from a deed or property record, or from any voluntary disclosure by Plaintiff. The only information Defendants had from the parking event was the captured license plate number, timestamps, vehicle images, and location data.

60.    After receiving the notice, Plaintiff reviewed the mailing. He had to determine who PPM was, why PPM had his personal information, and how PPM had obtained his home address. He also had to evaluate the stated threats of collections and booting or towing and decide how to respond.

61.    On November 30, 2023, Plaintiff paid $49.99 through the parkinginvoice.com payment portal. That amount consisted of the $45.00 reduced charge plus a $4.99 convenience fee. PPM confirmed receipt by email.

62.    Plaintiff paid the demanded amount to avoid the threatened consequences stated in the notice, including referral to collections, booting, and towing. Plaintiff does not concede that the amount demanded was lawful, enforceable, owed, or properly assessed under Florida law.

63.    The available November 28, 2023 capture of the parkinginvoice.com payment page displayed a simple form for entering a notice number or plate number. The captured page displayed "Etico Parking" branding. The captured page did not

[15]

show any DPPA consent clause, arbitration provision, class waiver, or checkbox requiring agreement to terms.

**D.    The unlawful obtainment of DMV-sourced personal information**

64.    The DPPA prohibits any person from knowingly obtaining personal information from a motor vehicle record for a purpose not permitted by the statute. 18 U.S.C. § 2724(a).

65.    Using the captured license plate number, Defendants knowingly obtained, or caused to be obtained, Plaintiff's personal information, including his name and home address, from a motor vehicle record. Defendants obtained that information directly from a motor vehicle record or through a vendor, database, or data source that obtains registered-owner information from motor vehicle records. Defendants obtained that information before mailing the Parking Charge Notice to Plaintiff's home, before Plaintiff had any opportunity to pay or dispute the alleged charge, and before any civil action, arbitration, collection referral, or individualized legal review was contemplated.

66.    The obtainment was not accidental. Defendants designed, operated, provided, supported, or used a standardized system that converts captured license plate numbers into registered-owner names and home addresses by querying motor vehicle records or by using vendors, databases, or data sources that obtain registered-owner information from motor vehicle records. PAVE's public FAQ states that "the vehicle owner's data is requested from the DMV."

[16]

67.     PPM's publicly available privacy policy states that its ALPR system does not contain personally identifying information. Plaintiff did not provide his name or home address to Defendants. Upon information and belief, the name and address used to mail Plaintiff's notice came from a motor vehicle record.

68.     Defendants obtained Plaintiff's personal information for the purpose of generating and mailing a private payment demand. That purpose is not permitted under 18 U.S.C. § 2721(b).

69.     Plaintiff did not authorize Defendants to obtain his personal information from any motor vehicle record. Before Defendants obtained his personal information and mailed the notice, Plaintiff did not provide "express consent" within the meaning of 18 U.S.C. § 2725(5). He did not sign any written consent form, execute any electronic consent bearing an electronic signature, or agree to any terms authorizing Defendants or their agents, vendors, or service providers to obtain, use, or disclose his DMV-sourced personal information.

70.     Any terms or conditions presented after Defendants obtained Plaintiff's DMV-sourced personal information could not retroactively authorize Defendants' prior obtainment, use, or disclosure of that information.

**E.     <u>The use and disclosure of DMV-sourced personal information</u>**

71.     After obtaining Plaintiff's personal information from a motor vehicle record, Defendants used and disclosed that information to generate a private parking notice and mail that notice to Plaintiff's home.

[17]

72. PPM used Plaintiff's DMV-sourced personal information by storing it in enforcement records, matching it to the captured license plate number, creating an enforcement account, generating a mailed demand, sending or causing that demand to be sent to Plaintiff's home, and processing payment in response to the demand.

73. The Technology Defendants used Plaintiff's DMV-sourced personal information by storing or processing it within their enforcement platform or systems, matching it to the captured license plate number, supporting notice generation, and transmitting information needed to generate and mail the Parking Charge Notice.

74. Defendants disclosed Plaintiff's DMV-sourced personal information by transmitting it among PPM, PAVE, Etico, and one or more mailing vendors to generate, print, or mail the Parking Charge Notice. Defendants also transmitted notice, account, or payment-related information associated with Plaintiff's DMV-sourced personal information to payment-related vendors in connection with Plaintiff's payment.

75. Upon information and belief, Defendants' regular enforcement workflow involves additional disclosure of DMV-sourced personal information to collection vendors for unpaid accounts and to vendors or agents involved in threatened booting or towing activity. The details of Defendants' data-sharing arrangements with mailing vendors, payment vendors, collection vendors, booting vendors, towing vendors, and other downstream recipients are within Defendants' knowledge and control.

76. The mailing Plaintiff received at his home was not a traffic citation. It was not issued by any government. It was not filed with any court or processed by any

[18]

governmental agency. It was a private demand from a private company, generated using personal information obtained from a protected motor vehicle record, and delivered to a home address that Defendants could not have obtained from the license plate capture alone.

### F.       Why no DPPA permissible use applies

77.     The DPPA provides a limited list of permissible uses of personal information from motor vehicle records. 18 U.S.C. § 2721(b). Defendants obtained, used, and disclosed Plaintiff's DMV-sourced personal information to identify the registered owner of a vehicle, locate that person's home address, generate and mail a private parking charge notice, and collect or attempt to collect a private parking charge. That purpose is not permitted under § 2721(b).

78.     Defendants' conduct was not permitted under § 2721(b)(3). Plaintiff did not provide Defendants with his name, home address, or other personal information for Defendants to verify, correct, or supplement. Defendants did not use motor vehicle records to verify information Plaintiff supplied to them. They used Plaintiff's license plate number to identify him in the first instance, obtain his home address, and send a private payment demand.

79.     Defendants' conduct was not for use in connection with the operation of private toll transportation facilities under § 2721(b)(10). The parking facility at 1211 Florida Avenue South is a privately owned parking lot. It is not a toll road, bridge, tunnel, or transportation facility. A parking lot is where travel ends. It is not a facility through which travelers pass and pay for the act of transit. Congress has included

[19]

"parking facilities" in other federal transportation statutes when it intended to address parking facilities, but it did not include parking facilities in § 2721(b)(10).

80.    Defendants also did not retrieve Plaintiff's personal information during the operation of a toll transportation facility or while Plaintiff's vehicle was present at the parking facility. Upon information and belief, the DMV lookup occurred only after the vehicle departed, as part of a post-departure invoicing process. That process was separate from the operation of any private toll transportation facility.

81.    Defendants' conduct was not for use in connection with any civil, criminal, administrative, or arbitral proceeding, or any investigation in anticipation of litigation, under § 2721(b)(4). PPM's notice did not threaten litigation. It threatened collections, booting, and towing. The notice identified itself as "an attempt to collect a debt," not as an investigation or preparation for any legal proceeding.

82.    Upon information and belief, PPM does not file civil actions or arbitrations to collect private parking charges of this type. Defendants' DMV-data workflow is standardized and automated, triggered whenever their system flags a vehicle for an alleged charge, regardless of whether any lawsuit, arbitration, or other proceeding is contemplated. The predominant purpose of Defendants' DMV-data workflow is commercial collection, not litigation.

83.    Defendants' conduct was not specifically authorized under the law of the State under § 2721(b)(14). No Florida statute specifically authorizes private parking companies or their technology vendors to obtain, use, or disclose personal information

[20]

from motor vehicle records to identify registered owners, locate their home addresses, or use DMV-sourced personal information for private parking charge notices.

84. The Parking Charge Notice did not identify any attorney, law firm, legal department, pending legal proceeding, contemplated legal proceeding, lawsuit, or arbitration. It threatened collections, booting, and towing, not litigation.

85. Upon information and belief, PPM uses the same notice-based enforcement workflow across its managed private parking facilities. The DMV-data retrieval process is standardized and automated, not a case-by-case legal investigation directed by counsel or tied to any specific legal proceeding.

86. Plaintiff did not provide "express consent" for Defendants to obtain, use, or disclose his personal information from any motor vehicle record. The act of parking in a lot is not written consent. Being subject to posted signage is not written consent. No conduct at or related to the parking facility constitutes the written consent or electronically signed consent required by the DPPA. 18 U.S.C. § 2725(5).

87. Defendants' conduct was not for any other purpose enumerated in § 2721(b). It was not for use by or on behalf of a government agency; for motor vehicle or driver safety, theft, emissions, recalls, market research, or statistical reporting; by an insurer, licensed private investigator, employer, or commercial driver's license verifier for a permitted purpose; to provide notice concerning a towed or impounded vehicle; for bulk marketing or solicitation based on state-obtained consent; or for any other purpose authorized by the DPPA.

[21]

88.    Plaintiff's DPPA claim arises from Defendants' conduct in obtaining, using, and disclosing personal information from motor vehicle records. The claim does not depend on the existence, formation, enforceability, or breach of any alleged parking contract. Plaintiff does not seek to enforce any alleged parking contract. Nor could any later-presented parking terms, payment terms, or website terms retroactively authorize Defendants' prior obtainment, use, or disclosure of Plaintiff's DMV-sourced personal information.

### G.    Concrete harm and standing allegations

89.    Defendants' conduct caused Plaintiff concrete and particularized harm.

90.    The first privacy injury occurred when Defendants obtained Plaintiff's personal information from a motor vehicle record without a permitted purpose. Defendants accessed, requested, retrieved, or caused the retrieval of Plaintiff's name and home address from a DPPA-protected motor vehicle record. The privacy invasion was complete when Defendants retrieved Plaintiff's name and home address and linked that information to his license plate number. Plaintiff had not voluntarily disclosed that information to Defendants for private parking enforcement. Defendants obtained it without Plaintiff's knowledge, authorization, or consent.

91.    Defendants used Plaintiff's license plate number as a search key to retrieve personal information that Plaintiff had not given them. Defendants then took information and placed it into their private parking enforcement workflow.

92.    Defendants also caused Plaintiff to lose control over his DPPA-protected personal information. Before Defendants' conduct, Plaintiff's name and home

[22]

address, as linked to his license plate and vehicle registration, were not in Defendants' possession. After Defendants' conduct, that information was in the hands of Defendants and, upon information and belief, their vendors and service providers. Plaintiff did not choose to give Defendants that information and had no practical ability to prevent its disclosure once it occurred.

93.    Defendants caused a second, separate privacy injury when they used and disclosed Plaintiff's DMV-sourced personal information to send a private payment demand to a home address Plaintiff had never given them. The notice came from a company Plaintiff had never dealt with, was addressed to him by name, and was mailed to an address Defendants could not have obtained from the license plate capture alone. The notice threatened collections, booting, and towing.

94.    These privacy harms occurred before Plaintiff paid the demand and do not depend on Plaintiff's later payment, time spent responding, subjective reaction, or any other individualized downstream consequence. They arise from Defendants' obtainment, use, and disclosure of Plaintiff's DPPA-protected personal information.

95.    Plaintiff provided his name and address to the State as part of the required vehicle-registration process. He did not give that information to Defendants, publish it for commercial use, or authorize Defendants to retrieve it for private parking enforcement.

96.    Plaintiff also suffered additional tangible harm. He paid $49.99 in response to the notice and its stated threats. That out-of-pocket payment was a direct

[23]

consequence of Defendants' obtainment and use of DMV-sourced personal information.

97.    Without the unlawful obtainment, Defendants could not have generated the notice. Without the notice, Plaintiff would not have faced the stated threats. Without the stated threats, Plaintiff would not have made the payment. Plaintiff does not concede that the amount demanded was lawful, enforceable, owed, or properly assessed.

98.    Plaintiff also spent time reviewing the mailed notice, determining who PPM was, attempting to understand how PPM obtained his home address from a motor vehicle record, evaluating the stated threats, and making payment. That time was spent in direct response to the privacy invasions described above.

99.    The privacy invasions described above, together with Plaintiff's additional payment and time injuries, constitute concrete and particularized injuries that are fairly traceable to Defendants' conduct and redressable by the remedies Congress provided for violations of the DPPA.

## CLASS ALLEGATIONS

100.    Plaintiff brings this action on behalf of himself and all others similarly situated under Federal Rule of Civil Procedure 23.

### A.    Proposed Classes

101.    For purposes of the proposed Classes, the "Class Period" means the four-year period before the filing of this action through the date of class certification.

102.    Plaintiff seeks to represent the following Nationwide PPM Class:

**All natural persons in the United States whose name, address, or other DPPA-protected personal information was obtained from, or derived from, a motor vehicle record and obtained, used, or disclosed by PPM, PAVE, Etico, or their agents, vendors, or persons acting on their behalf to generate, mail, collect, or attempt to collect a private parking charge notice relating to a private parking facility operated, managed, or enforced by PPM during the Class Period.**

103.    Plaintiff also seeks to represent, in the alternative or as a subclass, the following Nationwide Technology Defendant Class:

**All natural persons in the United States whose name, address, or other DPPA-protected personal information was obtained from, or derived from, a motor vehicle record and obtained, used, or disclosed by PAVE, Etico, or their agents, vendors, or persons acting on their behalf to generate, mail, collect, or attempt to collect a private parking charge notice relating to a privately owned, non-governmental parking facility using PAVE's or Etico's parking enforcement platform during the Class Period.**

104.    In the alternative, or as a subclass, Plaintiff seeks to represent the following Florida PPM Class:

**All natural persons whose name, address, or other DPPA-protected personal information was obtained from, or derived from, a motor vehicle record maintained by the Florida Department of Highway Safety and Motor Vehicles and obtained, used, or disclosed by PPM, PAVE, Etico, or their agents, vendors, or persons acting on their behalf to generate, mail, collect, or attempt to collect a private parking charge notice relating to a private parking facility operated, managed, or enforced by PPM in Florida during the Class Period.**

105.    Excluded from each Class are Defendants; Defendants' officers, directors, employees, affiliates, parents, subsidiaries, and legal representatives; any

[25]

entity in which any Defendant has a controlling interest; any person who timely and validly requests exclusion from the Class; and any judge presiding over this matter, together with the judge's immediate family members and judicial staff.

106.    Plaintiff reserves the right to amend, modify, or refine the Class definitions, and to seek certification of narrower classes, alternative classes, or subclasses, including state-specific subclasses, technology-vendor subclasses, operator-specific subclasses, and a subclass of persons who paid amounts in response to private parking charge notices generated, mailed, or collected using personal information obtained from motor vehicle records, based on discovery and further investigation.

### B.    Numerosity

107.    Upon information and belief, the Class or Classes consist of hundreds, if not thousands, of members. PPM operates private parking enforcement programs at numerous locations across Florida and other states. PAVE's website states that it is "Trusted in 450+ Locations Nationwide." Defendants use a standardized system to capture license plate numbers, obtain registered-owner information from motor vehicle records, and generate and mail private parking notices.

108.    Upon information and belief, the Technology Defendants' parking enforcement platform is not limited to PPM. PAVE and Etico provide or support substantially similar private parking enforcement workflows for other private parking operators, including workflows that use LPR captures, registered-owner lookups, notice generation, mailing, and payment processing.

[26]

109.   Class members can be identified through Defendants' records, including license plate capture records, registered-owner lookup records, DMV query records or vendor-supplied owner-information records, Technology Defendants' platform records, operator/client identifiers, facility/location identifiers, notice-generation records, mailing records, and payment records. Joinder of all members is impracticable.

## C.   **Commonality**

110.   Common questions of law and fact exist and are capable of classwide resolution, including:

a. Whether Defendants used a standardized workflow to obtain registered-owner names, addresses, or other DPPA-protected personal information from motor vehicle records, directly or through agents, vendors, databases, or data sources used to retrieve protected personal information from motor vehicle records.

b. Whether Defendants used or disclosed DMV-sourced personal information to generate, mail, collect, or attempt to collect private parking charge notices.

c. Whether the Technology Defendants obtained, used, disclosed, processed, stored, or transmitted DMV-sourced personal information in connection with PPM's private parking enforcement workflow.

d. Whether the Technology Defendants used the same or substantially similar DMV-data workflow for PPM and other private parking operators.

e. Whether obtaining, using, or disclosing DMV-sourced personal information to generate, mail, collect, or attempt to collect private parking charge notices is a purpose permitted under the DPPA.

f. Whether Defendants' conduct falls within any permissible use under 18 U.S.C. § 2721(b).

[27]

g.  Whether Defendants obtained "express consent" within the meaning of 18 U.S.C. § 2725(5).

h.  Whether Defendants acted knowingly, willfully, or with reckless disregard of the DPPA.

i.  Whether Defendants' obtainment, use, or disclosure of DMV-sourced personal information caused the same DPPA privacy injury to Plaintiff and Class members.

j.  Whether actual damages, liquidated damages, punitive damages, attorneys' fees, costs, and declaratory relief are available under the DPPA.

## D.  Typicality

111.  Plaintiff's claims are typical of the claims of the Class or Classes because they arise from the same standardized system and practices used for Class members. Plaintiff's claims also arise from the same legal theory: Defendants obtained, used, or disclosed DMV-sourced personal information for private parking enforcement without a DPPA-permitted purpose. Plaintiff's claims against the Technology Defendants are typical of the Nationwide Technology Defendant Class because they arise from the same or substantially similar platform and DMV-data workflow alleged above.

## E.  Adequacy

112.  Plaintiff will fairly and adequately represent the interests of the Class or Classes. His claims arise from the same standardized conduct as the claims of absent Class members, and his interests are aligned with theirs. Plaintiff has no interests antagonistic to the Class or Classes.

113.   Plaintiff has retained counsel experienced in class action, privacy, and DPPA litigation. Plaintiff and his counsel will prosecute this action on behalf of the Class or Classes.

### F.   Predominance and Superiority

114.   Questions of law and fact common to the Class or Classes predominate over any questions affecting only individual members. Defendants' liability turns on common, standardized conduct: whether Defendants obtained, used, or disclosed DMV-sourced personal information through their private parking enforcement workflow for a purpose not permitted by the DPPA.

115.   The central issues can be resolved through common proof, including Defendants' license plate capture records, registered-owner lookup records, DMV query records, vendor records, Technology Defendants' platform records, operator/client records and identifiers, notice-generation records, mailing records, payment records, policies, procedures, terms, and data-sharing agreements. Those records can show whose information was obtained, how it was obtained, how it was used, to whom it was disclosed, and whether Defendants used the same or substantially similar workflow across Class members.

116.   The Class claims do not depend on individualized proof of each Class member's subjective reaction to a notice, time spent responding, reason for payment, or emotional response. The common privacy injury arises from Defendants' obtainment, use, and disclosure of DMV-sourced personal information for private parking enforcement. Any individualized issues concerning actual damages,

[29]

payments, or downstream consequences can be addressed separately, including through subclasses, claims administration, or other case-management tools if necessary.

117. A class action is superior to individual actions. The DPPA provides meaningful statutory remedies, but individual claims are still too small in relation to the cost of federal litigation to make separate actions practical for most Class members. A class action will efficiently resolve the legality of Defendants' standardized DMV-data workflow in one proceeding, avoid inconsistent adjudications, and provide a practical means of relief for persons whose protected motor vehicle information was obtained, used, or disclosed through that workflow.

### G.    Ascertainability

118. Class members are ascertainable from Defendants' own business records. Upon information and belief, Defendants maintain records sufficient to identify license plate captures, registered-owner lookups, DMV query records or vendor-supplied registered-owner information, Technology Defendants' platform records, operator/client identifiers, facility/location identifiers, notices generated, notices mailed, amounts demanded, payments received, and account histories.

119. These records can identify the persons whose names, addresses, or other DPPA-protected personal information were obtained, used, or disclosed to generate, mail, collect, or attempt to collect private parking charge notices. The Class or Classes can therefore be identified through objective criteria without individualized inquiry

[30]

into any Class member's subjective circumstances, reaction to a notice, time spent responding, or reason for paying or not paying.

## COUNT I
### VIOLATION OF THE DPPA, 18 U.S.C. § 2724(a)
(Against PPM)

120. Plaintiff incorporates by reference paragraphs 1 through 119.

121. PPM is a "person" within the meaning of 18 U.S.C. § 2725(2).

122. PPM knowingly obtained, or caused to be obtained, personal information, including names and home addresses, from motor vehicle records for Plaintiff and members of the Nationwide PPM Class and Florida PPM Class. PPM did so by using captured license plate numbers to obtain registered-owner information from state motor vehicle records, or from vendors, databases, or data sources that obtain registered-owner information from motor vehicle records.

123. The personal information PPM obtained, or caused to be obtained, pertained to Plaintiff and members of the Nationwide PPM Class and Florida PPM Class within the meaning of 18 U.S.C. § 2724(a).

124. PPM knowingly used personal information from motor vehicle records for Plaintiff and members of the Nationwide PPM Class and Florida PPM Class to create enforcement records, generate private parking charge notices, mail or cause those notices to be mailed to their homes, and collect or attempt to collect amounts demanded in those notices.

125. PPM knowingly disclosed personal information from motor vehicle records for Plaintiff and members of the Nationwide PPM Class and Florida PPM

[31]

Class to the Technology Defendants and mailing vendors to generate, print, mail, process, or support private parking charge notices and related communications.

126. Upon information and belief, PPM also disclosed DMV-sourced personal information, or notice, account, and payment-related information associated with DMV-sourced personal information, to payment-related vendors, collection vendors, booting vendors, towing vendors, or other downstream vendors involved in PPM's enforcement workflow.

127. PPM obtained, used, and disclosed this personal information for purposes not permitted under 18 U.S.C. § 2721(b).

128. Plaintiff and members of the Nationwide PPM Class and Florida PPM Class did not provide "express consent" as defined by 18 U.S.C. § 2725(5).

129. PPM's conduct was knowing, willful, and in reckless disregard of the DPPA. PPM designed, implemented, and operates a standardized system that obtains, uses, and discloses DMV-sourced personal information to pursue private parking charges without any permissible purpose under 18 U.S.C. § 2721(b).

130. As a direct result of PPM's DPPA violations, Plaintiff and members of the Nationwide PPM Class and Florida PPM Class suffered the concrete privacy harms alleged above, including the unauthorized obtainment, use, and disclosure of their DMV-sourced personal information. Plaintiff also suffered the additional payment and time-related harms alleged above.

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide PPM Class and Florida PPM Class, respectfully requests that the Court enter judgment against PPM on Count I and grant the relief requested in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF THE DPPA, 18 U.S.C. § 2724(a)**
(Against PAVE)

131.   Plaintiff incorporates by reference paragraphs 1 through 119.

132.   PAVE is a "person" within the meaning of 18 U.S.C. § 2725(2).

133.   PAVE knowingly obtained, or caused to be obtained, Plaintiff's and the Class members' personal information, including names and home addresses, from motor vehicle records. PAVE did so by using captured license plate numbers to obtain registered-owner information from state motor vehicle records, or from vendors, databases, or data sources that obtain registered-owner information from motor vehicle records.

134.   The personal information PAVE obtained, or caused to be obtained, pertained to Plaintiff and the Class members within the meaning of 18 U.S.C. § 2724(a).

135.   PAVE's public materials describe this workflow. PAVE's FAQ states that "the vehicle owner's data is requested from the DMV." PAVE's Process page states that its system gathers vehicle-owner addresses "from our data sources" and sends parking charges by mail.

136.   Public materials associate PAVE with Etico Parking. Those materials identify "Etico Parking" as "Now Pave Mobility," and the November 2023

[33]

parkinginvoice.com payment page displayed "Etico Parking" branding. Upon information and belief, PAVE and Etico are related or commonly controlled entities associated with the same parking enforcement workflow.

137. Upon information and belief, PAVE knowingly used Plaintiff's and the Class members' personal information from motor vehicle records by storing, processing, matching, and transmitting that information within the Technology Defendants' enforcement platform or systems, and by using that information to support notice generation, mailing, enforcement, and collection workflows.

138. Upon information and belief, PAVE knowingly disclosed Plaintiff's and the Class members' personal information from motor vehicle records by transmitting that information to PPM, Etico, mailing vendors, and other vendors or agents acting at PPM's, PAVE's, or Etico's direction.

139. PAVE obtained, used, and disclosed this personal information for purposes not permitted under 18 U.S.C. § 2721(b).

140. Plaintiff and the Class members did not provide "express consent" as defined by 18 U.S.C. § 2725(5).

141. PAVE's conduct was knowing, willful, and in reckless disregard of the DPPA. PAVE provided, operated, or supported parking enforcement workflows that obtain, use, and disclose DMV-sourced personal information to pursue private parking charges without any permissible purpose under 18 U.S.C. § 2721(b), including workflows used for PPM and other private parking operators. PAVE publicly describes

[34]

its system as one that requests vehicle-owner data from the DMV and sends parking charges by mail.

142.    As a direct result of PAVE's DPPA violations, Plaintiff and the Class members suffered the concrete privacy harms alleged above, including the unauthorized obtainment, use, and disclosure of their DMV-sourced personal information. Plaintiff also suffered the additional payment and time-related harms alleged above.

WHEREFORE, Plaintiff, individually and on behalf of the Class or Classes, respectfully requests that the Court enter judgment against PAVE on Count II and grant the relief requested in the Prayer for Relief below.

## COUNT III
## VIOLATION OF THE DPPA, 18 U.S.C. § 2724(a)
(Against Etico)

143.    Plaintiff incorporates by reference paragraphs 1 through 119.

144.    Etico is a "person" within the meaning of 18 U.S.C. § 2725(2).

145.    Etico knowingly obtained, or caused to be obtained, Plaintiff's and the Class members' personal information, including names and home addresses, from motor vehicle records. Etico did so by using captured license plate numbers to obtain registered-owner information from state motor vehicle records, or from vendors, databases, or data sources that obtain registered-owner information from motor vehicle records.

[35]

146.   The personal information Etico obtained, or caused to be obtained, pertained to Plaintiff and the Class members within the meaning of 18 U.S.C. § 2724(a).

147.   Upon information and belief, Etico participated in the parking enforcement workflow described above. As of November 2023, the parkinginvoice.com payment page used in connection with PPM's private parking enforcement displayed "Etico Parking" branding. Public materials associate Etico Parking with PAVE. Etico also shares a Florida corporate address and overlapping officers with PPM and PAVE. Upon information and belief, Etico provided or supported the technology platform, data systems, notice-generation tools, payment systems, or related enforcement workflow used for Plaintiff's Parking Charge Notice and the Class members' private parking charge notices.

148.   Upon information and belief, Etico knowingly used Plaintiff's and the Class members' personal information from motor vehicle records by storing, processing, matching, transmitting, or making that information available within the Technology Defendants' enforcement platform or systems, and by using that information to support notice generation, mailing, enforcement, collection, and payment workflows.

149.   Upon information and belief, Etico knowingly disclosed Plaintiff's and the Class members' personal information from motor vehicle records by transmitting that information to PPM, PAVE, mailing vendors, payment vendors, and other vendors or agents acting at PPM's, PAVE's, or Etico's direction.

[36]

150. The parkinginvoice.com payment portal processed payments made in response to Parking Charge Notices generated through Defendants' enforcement workflow. Upon information and belief, by providing, operating, or supporting that portal, Etico received, processed, stored, or transmitted notice, account, or payment data associated with Plaintiff's and Class members' DMV-sourced personal information.

151. Etico obtained, used, and disclosed this personal information for purposes not permitted under 18 U.S.C. § 2721(b).

152. Plaintiff and the Class members did not provide "express consent" as defined by 18 U.S.C. § 2725(5).

153. Etico's conduct was knowing, willful, and in reckless disregard of the DPPA. Etico provided or supported parking enforcement workflows that obtain, use, and disclose DMV-sourced personal information to pursue private parking charges without any permissible purpose under 18 U.S.C. § 2721(b), including workflows used for PPM and other private parking operators.

154. As a direct result of Etico's DPPA violations, Plaintiff and the Class members suffered the concrete privacy harms alleged above, including the unauthorized obtainment, use, and disclosure of their DMV-sourced personal information. Plaintiff also suffered the additional payment and time-related harms alleged above.

[37]

WHEREFORE, Plaintiff, individually and on behalf of the Class or Classes, respectfully requests that the Court enter judgment against Etico on Count III and grant the relief requested in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class or Classes, respectfully requests:

a. An order certifying the Class or Classes, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b. An order declaring that Defendants' conduct violates the DPPA;

c. An award of actual damages or liquidated damages of $2,500, whichever is greater, for each DPPA violation, for Plaintiff and each member of the applicable Class or Classes under 18 U.S.C. § 2724(b)(1);

d. An award of punitive damages for willful or reckless disregard of the DPPA under 18 U.S.C. § 2724(b)(2);

e. An award of reasonable attorneys' fees and costs under 18 U.S.C. § 2724(b)(3);

f. Prejudgment and post-judgment interest as allowed by law; and

g. Such further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class or Classes, demands a trial by jury on all issues so triable.

[38]

Dated: May 18, 2026

Respectfully submitted,

**MARK FERRER & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130

By: *s/Victor Sanabria*
Charles M. Garabedian, Esq.
Florida Bar No. 1000974
Victor Sanabria, Esq.
Florida Bar No. 125292
victor@mfh.law
charles@mfh.law
eservice@mfh.law